

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 20, 2005

The Honorable Troy Fraser
Chair, Committee on Business and Commerce
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0334

Re: Application of conflict of interest law and the Open Meetings Act to the governing board of a groundwater conservation district (RQ-0304-GA)

Dear Senator Fraser:

You request a legal opinion on the following issues:

> (1) conflicts of interest involving the members of a groundwater conservation district board;
>
> (2) the meaning of "contemplated litigation" within Government Code section 551.071(1)(A); and
>
> (3) the exclusion of a board member who has threatened to sue the groundwater conservation district from a district executive session meeting to discuss the threat of litigation.[1]

You ask several questions in connection with each issue. Some of these involve questions of fact that cannot be resolved in an attorney general opinion. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0139 (2004) at 5, JC-0328 (2000) at 4, O-2911 (1940) at 2. We will address the other questions in relation to the applicable topic.

## I.     Background

You are specifically concerned about the Clearwater Underground Water Conservation District (the "GCD" or "district").[2] The district, which has common boundaries with Bell County, was created under Texas Constitution article XVI, section 59 pursuant to special law and is subject

---

[1]Letter from Honorable Troy Fraser, Chair, Senate Business and Commerce Committee, to Honorable Greg Abbott, Texas Attorney General (Dec. 21, 2004) (on file with Opinion Committee, *also available at* http://www.oag .state.tx.us) [hereinafter Request Letter].

[2]Telephone Conversation with Daniel Womack, Legislative Assistant to Senator Fraser (Mar. 4, 2005) [hereinafter Telephone Conversation with Daniel Womack].

to Water Code chapter 36. *See* Act of May 27, 1989, 71st Leg., R.S., ch. 524, §§ 1, 3, 6(a), 1989 Tex. Gen. Laws 1728, 1729, *amended by* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 22, 2001 Tex. Gen. Laws 32, 32-34 (relating to the election of district directors). *See also* TEX. WATER CODE ANN. § 36.001(1) (Vernon Supp. 2004-05). Four of the district's five directors are elected according to county commissioner precincts, and the other director is elected at large. *See* Act of Apr. 25, 2001, 77th Leg., R.S., ch. 22, § 1, 2001 Tex. Gen. Laws 32-33. The directors serve four-year terms. *See id.* at 33.

You summarize the events that caused the district to raise these issues. *See* Request Letter, *supra* note 1, at 1-2. You state that the general manager of a nonprofit water supply corporation ("WSC" or "corporation") served on the district's board of directors (the "board ") at a time when the water supply corporation applied to the district for a groundwater well permit. *See id.* The district scheduled a permit hearing pursuant to chapter 36 of the Water Code and required the board member who was also general manager of the corporation ("director/general manager") to fill out an affidavit stating his interest in the corporation pursuant to Local Government Code section 171.004. *See id.* at 2.

Local Government Code chapter 171, which regulates conflicts of interest involving local public officers, applies to the district's directors. *See* TEX. WATER CODE ANN. § 36.058 (Vernon 2000) (director of district is subject to Local Government Code chapter 171); *see also* TEX. LOC. GOV'T CODE ANN. ch. 171 (Vernon 1999 & Supp. 2004-05). Section 171.004 sets out the duty of a local public officer who has a substantial interest in a business entity or in real property:

> (a) If a local public official has a substantial interest in a business entity or in real property, the official shall file, before a vote or decision on any matter involving the business entity or the real property, an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter if:

>> (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; or

>> (2) in the case of a substantial interest in real property, it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property, distinguishable from its effect on the public.

*Id.* § 171.004(a) (Vernon 1999). *See also id.* § 171.002 (defining "substantial interest" in a business entity or real property).

Pursuant to chapter 171, a board member with a substantial interest in a business entity shall disclose his interest prior to a vote or decision on any matter involving the entity and "shall abstain

from further participation in the matter if . . . the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public." *Id.* § 171.004(a)(1). A knowing violation of section 171.004 is a Class A misdemeanor. *See id.* § 171.003(b).

A person has a substantial interest in a business entity if "funds received by the person from the business entity exceed 10 percent of the person's gross income for the previous year." *Id.* § 171.002(a)(2). *See also* Tex. Att'y Gen. Op. Nos. GA-0068 (2003) at 3-4, JM-424 (1986) at 2 (a nonprofit corporation is a business entity within chapter 171). Thus, if the district board member's salary as general manager of the nonprofit water supply corporation exceeded ten percent of his gross income for the previous year, he had a substantial interest in the corporation. Presumably, the director/general manager did have the requisite interest in the water supply corporation because, as you inform us, he filed the affidavit stating the nature and extent of his interest in the water supply corporation as required by Local Government Code section 171.004. *See* Request Letter, *supra* note 1, at 2.

You state as follows:

> After completing the required affidavit, the affected board member made comments to the other GCD board members and the staff of the GCD that his employer, the WSC, expected the GCD to grant the WSC a permit that authorized a specific amount of groundwater production . . . . The affected board member also stated that the WSC intended to file suit against the GCD if the WSC was not granted a well permit with the authorized groundwater production amounts it desired.

*Id.*

You further state that the district board of directors called an executive session as authorized by the Texas Open Meetings Act, *see* TEX. GOV'T CODE ANN. ch. 551 (Vernon 2004), *id.* § 551.071, "to discuss the threat made by the WSC to file suit against the GCD." Request Letter, *supra* note 1, at 2. "The affected board member informed the other GCD board members and the GCD staff that he intended to attend the executive session in which his employer's threat to file suit and the affected board member's conflict of interest would be discussed."[3] *Id.* The board's concern about the affected board member's attending the executive session caused it to raise the questions at issue here. *See id.*

---

[3] The affected board member did not attend the executive session to discuss the threatened litigation, nor had the WSC filed any litigation against the district as of March 4, 2005. *See* Telephone Conversation with Daniel Womack, *supra* note 2.

## II.    Meaning of "Further Participation" in a Matter

We turn to your first inquiry. Section 171.004 prohibits an interested official from "further participation" in a matter before the governmental body involving his business entity or real property if board action on the matter will have a special economic effect on the business entity or value of the real property. *See* TEX. LOC. GOV'T CODE ANN. § 171.004(a) (Vernon 1999). You ask us to define the phrase "further participation" as used in section 171.004(a).

Chapter 171 does not define "participation," but this office has defined the terms "participates" and "participation" in former article 988b, Revised Civil Statutes,[4] the predecessor of Local Government Code chapter 171.[5] *See* Tex. Att'y Gen. Op. No. JM-379 (1985). Former article 988b, section 3 provided that a local public official commits an offense if he knowingly

> *participates in a vote or decision on a matter* involving a business
> entity in which the local public official has a substantial interest . . . .

Act of May 30, 1983, 68th Leg., R.S., ch. 640, § 3, 1983 Tex. Gen. Laws 4079, 4080 (emphasis added). *See* TEX. LOC. GOV'T CODE ANN. § 171.003(a)(1) (Vernon 1999) (violation of section 171.004 is a prohibited act). Former article 988b, section 4 provided that if a local public official had "a substantial interest in a business entity that would be peculiarly affected by any official action taken by the governing body" the official "before a vote or decision on the matter, shall file an affidavit . . . *and shall abstain from further participation in the matter*." Act of May 30, 1983, 68th Leg., R.S., ch. 640, § 4, 1983 Tex. Gen. Laws 4079, 4080-81 (emphasis added). *See* TEX. LOC. GOV'T CODE ANN. § 171.004 (Vernon 1999) (Affidavit and Abstention From Voting Required).

Attorney General Opinion JM-379 considered the application of article 988b to a school trustee who owned a substantial interest in a bank that was suing the school district over the property tax valuation of its stock. The interested trustee abstained from voting for or against any matter pertaining to the litigation but discussed the litigation with members of the board of trustees. *See* Tex. Att'y Gen. Op. No. JM-379 (1985) at 1. This office determined that the interested trustee's discussions with other board members constituted "participation in the matter" within former article 988b, section 4 and concluded that "participation 'in a vote or decision' . . . [within former article 988b] includes deliberating with the board about the matter." *See id.* at 4-5. If the interested trustee were able to discuss the matter with the other board members, he could influence the board's final action. *See id.* at 5.

You ask what "objective activities or conduct" may be considered "further participation in," as that phrase is used in section 171.004(a). Request Letter, *supra* note 1, at 3. We cannot

---

[4]Act of May 30, 1983, 68th Leg., R.S., ch. 640, §§ 1-8, 1983 Tex. Gen. Laws 4079, 4079-82 (adopting article 988b, Revised Civil Statutes).

[5]*See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49, 1987 Tex. Gen. Laws 707, 949-950, 1306 (repealing former article 988b, Revised Civil Statutes and reenacting it as chapter 171 of the Local Government Code); *see also* Act of Feb. 21, 1989, 71st Leg., R.S., ch. 1, §§ 40-41, 1989 Tex. Gen. Laws 1, 45-47 (act conforming Local Government Code to certain acts of the 70th Legislature).

exhaustively describe all conduct that may constitute "further participation." We point out, however, that board members must in any case avoid deliberating by exchanging written communications or communicating through a third party. *See generally* Tex. Att'y Gen. Op. No. JC-0307 (2000) at 5-6.

You also ask whether an affected board member's attendance at an executive session of the governmental body constitutes "further participation in the matter" if the executive session is called (1) to discuss possible litigation contemplated by the affected board member or his employer, or (2) to discuss the board member's conflict of interest. *See* Request Letter, *supra* note 1, at 3. Chapter 171 does not answer this question, and neither the courts nor this office has considered whether "further participation in the matter" also includes attending an executive session called to discuss a matter in which a board member has a substantial interest.[6]

The language you ask us to construe helps define a penal offense. "A local public official commits an offense if the official knowingly . . . violates Section 171.004," which requires an interested official to "abstain from further participation in the matter" under specified circumstances. *See* TEX. LOC. GOV'T CODE ANN. §§ 171.003(a)(1), .004(a) (Vernon 1999). The offense is a Class A misdemeanor. *See id.* § 171.003(b).

Due process requires that criminal statutes give fair notice of activity that is outlawed. *See U.S. v. Lanier*, 520 U.S. 259, 266 (1997). A criminal statute must give persons of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See id.*; *Margraves v. State*, 34 S.W.3d 912, 920 (Tex. Crim. App. 2000). Moreover, "[p]enal statutes are still strictly construed." *Brown v. De La Cruz*, 156 S.W.3d 560, 565 (Tex. 2004); *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994). In "construing a criminal statute, we seek to effectuate the intent of the Legislature, focusing on the statute's literal text, and we attempt to discern the fair, objective meaning of that text." *Fallin v. State*, 93 S.W.3d 394, 395-96 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). If the language of a criminal statute is not plain a court may consider, in arriving at a sensible interpretation, extratextual factors such as executive or administrative interpretations of the statute or legislative history. *See Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991). Given the requirement that a criminal statute give fair notice and the rules of construction stated by the Texas Supreme Court and Court of Criminal Appeals, we will not adopt an expansive interpretation of "further participation."[7]

To determine whether "further participation" within section 171.004(a) includes "attendance . . . at an executive session" on a matter in which a board member is substantially interested, we will consider the meaning of the same word as used in other acts of a similar nature. *See Brown v. Darden*, 50 S.W.2d 261, 263 (Tex. 1932); *Tex. Bank & Trust Co. v. Austin*, 280 S.W. 161, 162 (Tex.

---

[6]We assume, without deciding, that any such executive session would be held only as authorized by the Open Meetings Act.

[7]The court in *Hamilton v. Town of Los Gatos*, 261 Cal. Rptr. 888, 891 (Cal. Ct. App. 6th Dist. 1989), construing a California conflict of interest statute, determined that "to participate[] in making . . . a governmental decision" included silent attendance at an executive session meeting. This conclusion was based on policy arguments underlying the statute and the state open meetings act. No criminal provision was at issue.

1926); *L&M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex. Civ. App.–Tyler 1979, writ dism'd); Tex. Att'y Gen. Op. No. GA-0251 (2004) at 3. We note that legislation expressly concerned with meetings uses the terms "participation" and "attend" in a way that helps us construe "further participation" in section 171.004(a).

The term "participate" has been defined as meaning "to take part–to share in common with others." *Reardon v. State*, 4 Tex. Ct. App. 602 (1878). *See also* XI OXFORD ENGLISH DICTIONARY 268 (2d ed. 1989) (defining "participate" as "[t]o take or have a part or share of or in; to possess or enjoy in common *with* others"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 847 (10th ed. 1993) (defining "participate" as "to take part [as] in class discussions"). "Attend" has, in contrast, been defined as "to be present." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 74 (10th ed. 1993). In the context of Texas statutes on meetings, "attend" means mere passive presence, while "participate" means active engagement in the subject matter at issue in the meeting.

For example, the superintendent of a hospital district created under Health and Safety Code chapter 282 "*may attend board meetings* and meetings of a board committee and *may participate in the discussion of matters within the superintendent's functions*, but . . . may not vote on matters considered by the board." TEX. HEALTH & SAFETY CODE ANN. § 282.027(d) (Vernon 2001) (emphasis added). Under this provision, the superintendent may *attend* all meetings, that is, be present at all meetings, but may *participate* only in the discussion of matters within his function. In another statute, the administrator of the Agricultural Finance Authority may "*attend all meetings and participate*, but not vote, in all proceedings of the authority." TEX. AGRIC. CODE ANN. § 58.015(c) (Vernon 2004) (emphasis added). *See also* TEX. LOC. GOV'T CODE ANN. § 111.007(a) (Vernon 1999) (any taxpayer of a county "may attend and may participate" in a public hearing on the proposed county budget) (counties with a population of 225,000 or less); TEX. TRANSP. CODE ANN. § 22.0745(d) (Vernon Supp. 2004-05) (nonvoting member on a joint airport board is not entitled to "*attend or participate in*" a closed meeting of the joint board) (emphasis added). *See also* Tex. Att'y Gen. Op. No. JC-0308 (2000) at 1 ("attendance" by a quorum of a state agency board at a legislative committee hearing is subject to the Open Meetings Act if a board member participates in the discussion).

We rely on the distinction between the terms "attend" and "participate in" a meeting as used in Texas statutes to construe the phrase "further participation in the matter." TEX. LOC. GOV'T CODE ANN. § 171.004(a) (Vernon 1999). Thus, the limit on "further participation" does not preclude the interested public official from "attending" meetings, including executive session meetings, relevant to the matter in which he has a substantial interest.

A member of a governmental body does not "participate" in a matter for purposes of Local Government Code section 171.004 by merely attending an executive session on the matter and remaining silent during the deliberations. However, it may be wise for the interested public officer to refrain from attending open or closed meetings that address the matter in which he is interested. *See Graham v. McGrail*, 345 N.E.2d 888, 891-92 (Mass. 1976) (advising public officer with conflict of interest under state law to leave meeting).

### III. "Pending or Contemplated Litigation" in Government Code Section 551.071(1)(A)

You ask us to define the phrase "contemplated litigation" in section 551.071(1)(A) of the Government Code, which authorizes a governmental body to hold an executive session concerning pending or contemplated litigation. The section provides as follows:

> A governmental body may not conduct a private consultation with its attorney except:
>
> (1) when the governmental body seeks the advice of its attorney about:
>
> (A) pending or contemplated litigation; or
>
> (B) a settlement offer; or
>
> (2) on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with this chapter.

TEX. GOV'T CODE ANN. § 551.071 (Vernon 2004). In particular, you ask whether "contemplated litigation" within section 551.071(1)(A) may include a contested hearing before an administrative agency or other governmental agency, including a groundwater conservation district. Request Letter, *supra* note 1, at 3. Although you ask about governmental entities in general, we must limit our answer to a contested hearing before the Clearwater Underground Water Conservation District because this answer is based on provisions of chapter 36 and rules promulgated by this district. We have found no provisions generally applicable to contested hearings conducted by local governmental entities.

This office has concluded that a contested case under the Texas Administrative Procedure Act, TEX. GOV'T CODE ANN. ch. 2001 (Vernon 2000 & Supp. 2004-05), is "litigation" within the context of the Public Information Act, *id.* ch. 552 (Vernon 2004), and the Open Meetings Act. *See* Tex. Att'y Gen. LO-96-116, at 5-6; Tex. Att'y Gen. ORD-588 (1991) at 2. A "contested case" under the Administrative Procedure Act is "a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." TEX. GOV'T CODE ANN. § 2001.003(1) (Vernon 2000).

Open Records Decision 588 addressed the exception from public disclosure for information "relating to litigation . . . to which the state or a political subdivision is or may be a party." *Id.* § 552.103(a) (Vernon 2004). It concluded that the term "litigation" includes a "contested case" under the Texas Administrative Procedure Act, *id.* ch. 2001 (Vernon 2000 & Supp. 2004-05). *See* Tex.

Att'y Gen. ORD-588 (1991) at 4.[8] *See also* Tex. Att'y Gen. ORD-301 (1982) at 1-2 ("'litigation' encompasses proceedings conducted in quasi-judicial forums as well as strictly judicial ones") (cited by Tex. Att'y Gen. ORD-588 (1991) at 2). "When a contested case is heard in a quasi-judicial forum, discovery takes place and the evidence is presented at the administrative level, . . . [and] fact questions are heard and resolved by the agency, regardless of whether the case reaches a court for review under the substantial evidence rule." Tex. Att'y Gen. ORD-588 (1991) at 4. Thus, "[s]ection 3(a)(3) [the predecessor of Government Code section 552.103(a)] can have its intended effect only by applying it to information related to a contested case before an administrative agency "to which the state . . . is, or may be, a party." *Id.*

Relying on Open Records Decision 588, this office construed the term "litigation" within Government Code section 551.071(1)(A) to include "contested cases" under the Texas Administrative Procedure Act. *See* Tex. Att'y Gen. LO-96-116, at 5. Letter Opinion 96-116 noted that "an adversary proceeding may encompass a proceeding conducted in a quasi-judicial forum as well as in a judicial forum," stating that

> Government Code section 551.071 is designed to protect a governmental body's interests in an adversary proceeding, where to discuss a pending proceeding with the governmental body's attorney in an open meeting would permit the opposing party to learn the governmental body's strategy, evidence, and vulnerabilities.

*Id.* at 5-6. *See also* TEX. GOV'T CODE ANN. § 2001.003(2) (Vernon 2000) ("license" includes state agency permit). Thus, a governmental body that is subject to the Administrative Procedure Act may meet in executive session under section 551.071(1)(A) to deliberate about a "contested case" before it.

We point out that Attorney General Letter Opinion 96-116 and Open Records Decision 588 conclude that a contested case under the Administrative Procedure Act is itself "litigation," not merely anticipated or contemplated litigation. We will also consider whether a contested permit hearing before the Board of Directors of the Clearwater Underground Water Conservation District is "litigation" within Government Code section 551.071(1)(A), not just "contemplated litigation."

The district is not a state agency and is therefore not subject to the Administrative Procedure Act. *See id.* § 2001.003(1) ("contested case" is a proceeding, in which a state agency determines the legal rights, duties, or privileges of a party). We will examine the provisions governing the district's permitting authority to determine whether a permit hearing before the board is "litigation" for purposes of the Open Meetings Act exception.

---

[8]Open Records Decision 588 (1991) addressed the former Texas Open Records Act, article 6252-17a, Revised Civil Statutes, which was recodified as Government Code chapter 552 in 1993 and renamed the "Public Information Act" in 1995. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 594; *see also* Act of May 29, 1995, 74th Leg., ch. 1035, § 1, 1995 Tex. Gen. Laws 5127, 5127-42.

A groundwater conservation district "shall require permits for the drilling, equipping, or completing of wells or for substantially altering the size of wells or well pumps." TEX. WATER CODE ANN. § 36.113(a) (Vernon Supp. 2004-05). *See id.* §§ 36.113(c) (information that a district may require to be included in a permit application); 36.1131 (Vernon 2000) (elements of permit application). A district "shall promptly consider and act on each administratively complete application for a permit." *Id.* § 36.114 (Vernon Supp. 2004-05). *See also id.* ("administratively complete" applications include information required under sections 36.113 and 36.1131).

The Clearwater Underground Water Conservation District conducts permit hearings in accordance with procedural rules adopted under section 36.101. *See id.* § 36.101(b) (the district board shall adopt rules to implement chapter 36, including rules governing procedure before the board). The district's rules provide for notice of a permit hearing and authorize the presiding officer to rule on motions and on the admissibility of evidence, administer oaths to persons presenting testimony, and examine witnesses. *See* CLEARWATER UNDERGROUND WATER CONSERVATION DISTRICT, DISTRICT RULES, Rules 8.10.2, 8.10.3(c), (e)-(f) (2004).[9] *See also id.* § 8.10.5 (authority of presiding officer to admit and exclude evidence).

Any interested person, including the district's general manager, may appear at a hearing and "present evidence, exhibits, or testimony, or make an oral presentation as determined by the Board." *Id.* Rule 8.10.4(a). *See also id.* Rule 3.1 (employment and duties of general manager of district). A person who wishes to appear at a permit hearing must provide the district with specific information, such as his name and address, whether he wishes to testify and whether he is contesting the application. *Id.* Rule 8.10.4(a). The general manager of the district must state on the record whether he "proposes denial, a partial grant, or full grant of the application." *Id.*

The rules provide for uncontested and contested hearings. An uncontested hearing is defined as follows:

> Uncontested Hearings: If no interested persons contest the application and the General Manager proposes to grant the application, whether a partial or full grant, the application shall be considered uncontested. . . . No Hearing Report shall be required for an uncontested hearing.

*Id.* Rule 8.10.8.

If an interested person has appeared to contest the application, the presiding officer must submit to the board a hearing report, which must include a summary of the subject matter of the hearing, the evidence or public comments received, and the presiding officer's recommendations for board action. *See id.* Rule 8.10.7. Any person who participated in the hearing may review the report and submit written exceptions to the report to the board. *See id.* Within 35 days after the final hearing, the board must decide whether or not to issue a permit or a permit amendment and set the

---

[9]*Available at* http://www.clearwaterdistrict.org (last visited June 17, 2005).

permitted volume and other terms of the permit. *See id.* Rule 8.10.9. *See also id.* Rule 8.10.10 (request for rehearing and appeal).

After all administrative appeals to the district are final, a person or corporation "affected by and dissatisfied with" a district order may file a suit against the district or its directors to challenge the order's validity. *See* TEX. WATER CODE ANN. § 36.251 (Vernon 2000). In trial of the suit, "[t]he burden of proof is on the petitioner, and the challenged law, rule, order, or act shall be deemed prima facie valid." *Id.* § 36.253. "The review on appeal is governed by the substantial evidence rule as defined by Section 2001.174, Government Code." *Id.*

Thus, the district board finds facts and the courts review its decisions on permit applications according to the substantial evidence rule of the Administrative Procedure Act. Moreover, a contested permit hearing before the district board, as defined by its rules, places the applicant in an adversarial relation to the district's general manager or other person who contests the application. It may ultimately lead to a lawsuit against the district by a person who is "affected by and dissatisfied with" the district's order on the contested permit application. *Id.* § 36.251.

A contested permit hearing of the Clearwater Underground Water Conservation District raises governmental interests like those at issue in Open Records Decision 588 and Attorney General Letter Opinion 96-116. *See* Tex. Att'y Gen. LO-96-116, at 5-6 (discussion of a pending proceeding with the governmental body's attorney in an open meeting would permit the opposing party to learn the governmental body's strategy, evidence, and vulnerabilities). We conclude that a contested permit hearing before the Board of Directors of the Clearwater Underground Water Conservation District is "litigation" that the district board may discuss in executive session under section 551.071(1)(A) of the Government Code. An uncontested permit hearing, as defined by the district's rules, is not an adversary proceeding. Thus, an uncontested permit hearing is neither "litigation" nor "contemplated litigation" within the Open Meetings Act,[10] and the district board may not discuss it in executive session under Government Code section 551.071(1)(A).

## IV.    Exclusion of a Board Member from an Executive Session and Related Questions

You ask whether a governmental body may exclude a board member from an executive session under Government Code section 551.071(1)(A) to discuss contemplated litigation when the board member or his employer has threatened to bring the litigation that the board will discuss. We note that the affected board member did not attend the executive session to discuss the threatened

---

[10]In view of our conclusion, we need not consider your general questions about the meaning of "contemplated litigation." *But see* TEX. GOV'T CODE ANN. § 552.103(a) (Vernon 2004) (excepting from required disclosure under the Public Information Act information related to "litigation . . . to which the state or a political subdivision . . . *may* be a party") (emphasis added); Tex. Att'y Gen. ORD-677 (2002) at 3 (mere conjecture that litigation may ensue is insufficient to invoke exception); Tex. Att'y Gen. ORD-183 (1978) at 2 (exception requires reasonable anticipation of litigation relating to a specific matter). *See also* Tex. Att'y Gen. ORD-351 (1982) at 2 (litigation was not reasonably anticipated when individual merely threatened litigation in telephone conversation and did not follow with meaningful action).

litigation, nor has the Water Supply Corporation that employs him filed suit against the district.[11] After this opinion was requested, the district board granted the permit over which the lawsuit was threatened. *See* Clearwater Underground Water Conservation District Meeting Minutes (Jan. 25, 2005), Agenda Item 4.[12] Thus, there is no need to answer this question at present. In addition, this question raises important policy issues concerning the powers and duties of elected and appointed board members and conflicts between their public responsibilities and their personal interests, issues that cannot be satisfactorily addressed in the context of the district's narrow hypothetical question. Moreover, there is virtually no legal authority relevant to this inquiry.[13] Given that question is moot, and that it raises novel issues that cannot be resolved in the abstract, we will not address it.

You also ask us to define "adverse party." *See* Request Letter, *supra* note 1, at 4. An "adverse party" is a party whose interests are opposed to another party to a legal action. *See Highsmith v. Tyler State Bank & Trust Co.*, 194. S.W.2d 142, 145 (Tex. Civ. App.–Texarkana 1946, writ ref'd); BLACK'S LAW DICTIONARY 1144 (7th ed. 1999). This office has used "adverse" and "adverse party" consistently with these definitions. *See* Tex. Att'y Gen. ORD-551 (1990) at 4-5; Tex. Att'y Gen. LO-89-77, at 3.

You ask whether a governmental body's attorney-client privilege would be waived[14] in various circumstances. For example, you wish to know whether waiver would occur if a board member who threatened to sue the board attended an executive session to discuss the proposed suit, or if the board's attorney provided certain legal memoranda information to all board members, including a board member who is adverse to the board or may become adverse to the board. Whether the privilege is waived in a particular case depends upon the relevant facts. *See* TEX. R. EVID. 503; *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993). This office cannot answer questions of fact and therefore cannot answer these questions. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0139 (2004) at 5, GA-0003 (2002) at 1, JC-0328 (2000) at 4, H-56 (1973) at 3, O-2911 (1940) at 2.

We point out that a member of a governmental entity has a right of access to the entity's records when he requests them in his official capacity. As we stated in Attorney General Opinion GA-0138:

---

[11]*See* Telephone Conversation with Daniel Womack, *supra* note 2.

[12]*Available at* http://www.clearwaterdistrict.org (last visited June 17, 2005).

[13]This office and a New Jersey Court have both concluded that a school board member who has sued the school board may be excluded from an executive session to discuss the pending litigation brought by the school board member. *See* Tex. Att'y Gen. Op. No. JM-1004 (1989); *see also Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen*, 598 A.2d 1232, 1233 (N.J. Super. Ct. App. Div. 1991). We find no authority on excluding a board member who merely contemplates litigation against his board.

[14]You ask about waiver of the attorney-client privilege under the Texas Rules of Evidence, not waiver of Government Code section 552.103, which protects from disclosure under the Public Information Act "information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party." TEX. GOV'T CODE ANN. § 552.103(a) (Vernon 2004).

> A member of a governing body has a right to access the documents of that body . . . because of the member's inherent powers of office. While there do not appear to be Texas court decisions directly concerning the issue, on several occasions this office has observed that a member of a governing body has an inherent right of access to the records of that body when requested in the member's official capacity and for the member's performance of official duties. *See* Tex. Att'y Gen. Op. Nos. JC-0283 (2000) at 3-4, JC-0120 (1999) at 3-5, JM-119 (1983) at 3; Tex. Att'y Gen. LO-93-069, at 1-2.

Tex. Att'y Gen. Op. No. GA-0138 (2004) at 3. *See also Gabrilson v. Flynn*, 554 N.W.2d 267, 274 (Iowa 1996) (school board members generally should be allowed access to both public and private records necessary for the proper discharge of their duties). Whether a member requests records in his official capacity is a fact question that cannot be resolved in an attorney general opinion. *See* Tex. Att'y Gen. LO-93-069, at 3. However, the fact that a board member has filed suit against the board would raise the question whether he requested records about the lawsuit in his official capacity.

We finally observe that a public officer holds a public trust, and he should discharge his duties with honesty and integrity. *See Alsup v. State*, 238 S.W. 667, 670 (Tex. Crim. App. 1922); *Jones v. State*, 109 S.W.2d 244, 251 (Tex. Civ. App.–Texarkana 1937, no writ). Given these responsibilities, a public officer who is suing or planning to sue his governmental body should avoid using his public position to secure access to information related to the litigation, for example, by voluntarily refraining from attending executive sessions regarding the litigation and from accepting confidential documents related to the litigation.

## S U M M A R Y

The directors of an underground water conservation district are subject to chapter 171 of the Local Government Code, which regulates conflicts of interest involving local public officials. Chapter 171 requires a local public official with a substantial interest in a business entity or real property on which board action will have a special economic effect to disclose his interest and abstain from further participation in the matter. A violation of this requirement is a Class A misdemeanor. When section 171.004(a) requires a local public official to abstain from further participation in a matter, it does not prohibit him from attending an executive session of his governmental body held to discuss the matter.

A contested permit hearing before the Board of Directors of the Clearwater Underground Water Conservation District is "litigation" within Government Code section 551.071(1)(A).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee